**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION**

| | |
|---|---|
| JOSHUA BUSBY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JUSTIN DICKSON and LUCAS CALL,<br><br>　　　　　Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 1:10-CV-171<br><br>District Judge Ted Stewart |

Plaintiff, inmate Joshua Busby, filed this *pro se* civil rights suit under 42 U.S.C. § 1983.

*See* 42 U.S.C.A. § 1983 (West 2012).  Plaintiff was allowed to proceed *in forma pauperis* under

28 U.S.C. § 1915.  *See* 28 U.S.C.A. § 1915 (West 2012).  Before the Court is Defendants'

Motion for Summary Judgment.

## ANALYSIS

### I.  Introduction

Plaintiff's Complaint asserts claims of unreasonable search and seizure and excessive

force in violation of the Fourth Amendment.  Plaintiff's claims stem from his detention and

subsequent arrest in the early morning hours of June 19, 2010.  While being placed under arrest

Plaintiff attempted to flee but was apprehended and injured in the process.  The Complaint names

as defendants Justin Dickson and Lucas Call, both of whom are officers with the Ogden City

Police Department.  Plaintiff seeks compensatory damages for medical and dental expenses

incurred as a result of his injuries.

On May 31, 2011, Defendants filed a *Martinez* Report (Doc. no. 22) addressing Plaintiff's allegations.[1]   No additional discovery was conducted.  Based on the evidence presented in the *Martinez* Report, Defendants now move for summary judgment on each of Plaintiff's claims. Defendants assert that Plaintiff's detention and arrest were reasonable and that Plaintiff's injuries were accidental and resulted from his attempt to escape.  Defendants also contend that they are entitled to qualified immunity because existing law at the time of the incident did not clearly establish their actions to be unlawful.  Plaintiff has had ample opportunity to respond to Defendants' motion and has submitted his own affidavit regarding the incident.

## II.  Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a meter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case."  *Cellotex v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).  This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case.  *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of

---

[1] In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the Tenth Circuit approved the practice of district courts ordering prison administrators to prepare a report to be included with the pleadings in cases where a prisoner alleges a constitutional violation by prison officials.

material fact regarding the existence of [the disputed] element." *Id.* Rule 56 of the Federal Rules

of Civil Procedure requires a nonmovant "that would bear the burden of persuasion at trial" to

"go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in

the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v.*

*Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998).  The specific facts put forth by the

nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific

exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024

(10th Cir. 1992).  Mere allegations and references to the pleadings will not suffice.  However, the

Court must "examine the factual record and reasonable inferences therefrom in the light most

favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir.

1999).

### III.  Material Facts[2]

At approximately 2:26 a.m. on June 19, 2010, Ogden City Police Officer Justin Dickson,

responded to two reports of a robbery involving stolen guns and shots fired near 850 23rd Street,

Ogden, Utah.  (*See* Affidavit of Justin Dickson ("Dickson Aff.")(Doc. no. 21, Ex. A) ¶¶ 1-3.)

While responding to these reports, Officer Dickson observed Plaintiff run into the street from

857 23rd Street.  (*Id.* at ¶ 4.)  Plaintiff was covered in what Officer Dickson identified as prison

tattoos.  *Id.*  Plaintiff approached a parked car and tapped it, which Officer Dickson believed to

be a signal to the driver to leave.  (*Id.* at ¶ 5.)

---

[2] These facts are drawn from Defendants' Memorandum in Support of Motion for Summary Judgment (Doc. no. 21).  Except as noted, Plaintiff does not dispute these facts.

Officer Dickson asked Plaintiff to stop, which Plaintiff initially ignored.  After Officer Dickson asked a second time, Plaintiff complied and approached Officer Dickson's patrol car. (*Id*. at ¶ 6.)  Officer Dickson asked Plaintiff for his identification, which showed Plaintiff's address as 2445 South Water Tower Way.  Officer Dickson recognized this address as a work release facility for recently released prisoners.  (*Id*. at ¶ 7.)  After further investigation, Officer Dickson learned that Plaintiff had been in prison for robbery and that there was a warrant for Plaintiff's arrest in Idaho.  (*Id*. at ¶ 8.)  When questioned about his presence in the area, Plaintiff explained that he was at a party nearby and that his friend came running in and told him there was a fight and someone had shot a gun.  (*Id*. at ¶ 9.)

While talking to Officer Dickson, Plaintiff kept putting his hands in his pockets, despite repeated requests by Officer Dickson that he stop.  (*Id*. at ¶ 10.)  Officer Dickson asked Plaintiff if he had any weapons, which Plaintiff denied.  (*Id.* at ¶ 11.)  Officer Dickson then told Plaintiff that he was going to search him.  As Plaintiff was turning around, Officer Dickson observed a knife clipped in Plaintiff's back pocket which Plaintiff claimed to have forgotten about.  (*Id*. at ¶¶ 12-13.)  Before Officer Dickson could complete his search, Plaintiff spun around and ran away. (*Id*. at ¶ 14.)  Officer Dickson ran after Plaintiff telling him to stop and that he was under arrest. (*Id*. at ¶ 15.)  During this chase, Officer Dickson and Plaintiff collided with a fence but Plaintiff pushed Officer Dickson away and continued trying to flee.  (*Id*. at ¶¶ 16-17.)

From his patrol car Officer Call observed Plaintiff "pull[] away and beg[in] to run away from Officer Dickson."  (Supplemental Report of Officer Call (Doc. no. 21, Ex. B) at 1.)  Officer Call exited his patrol car and joined Officer Dickson in the chase.  (*Id*.)  Officer Call could hear

Officer Dickson yelling at Plaintiff to stop while they were chasing him. (*Id*.) When Officer Call rounded a corner he saw Plaintiff attempting to escape by pushing Officer Dickson. (*Id*.) Plaintiff then turned and ran toward Officer Call, who readied himself in a football stance. (*Id*.) Plaintiff tried to duck under Officer Call's arms, but with the assistance of Officer Dickson they were able to take Plaintiff to the ground. (*Id*.; Dickson Aff. at ¶ 18.) Once they were on the ground Plaintiff continued to resist arrest but after approximately fifteen to twenty seconds the officers were able to handcuff Plaintiff. (*Id.*; Dickson Aff. at ¶¶ 19-20.)

After arresting Plaintiff, Officer Dickson searched him incident to arrest and found a marijuana pipe and a bag of what appeared to be methamphetamine. (Dickson Aff. at ¶ 21.) Officers Dickson and Call also observed that Plaintiff had suffered chipped and broken teeth, cuts on his head and mouth, and small lacerations across his chest and stomach. (*Id.*; Dickson Aff. at ¶ 22.) The officers then called for medical support and took Plaintiff to the hospital for medical care before booking him into jail. (*Id.*; Dickson Aff. at ¶ 23.)

On June 19, 2010, Mr. Busby was charged with (1) interfering with a public servant, (2) possession of a firearm by a restricted person, (3) avoiding apprehension, (4) possession of drug paraphernalia, and (5) possession of methamphetamine. (*See* Ogden Police Department Charge Summary (Doc. no. 21, Ex. C).) On November 23, 2010, Mr. Busby plead guilty to three counts including: (1) Attempted Possession or Use of a Controlled Substance; (2) Use or Possession of Drug Paraphernalia; and (3) Failure to Stop at Command of Law Enforcement. (*See* Docket, *State of Utah v. Joshua Jay Busby*, Case Number 101901399, p. 7 (Doc. no. 21, Ex. D).)

## IV.  Defendants' Motion for Summary Judgment

### A.  Detention and Search

Plaintiff alleges that Defendant Dickson violated the Fourth Amendment prohibition against unreasonable searches and seizures by detaining and attempting to search Plaintiff without probable cause.  Plaintiff contends that Dickson had no reason to detain Plaintiff for questioning or to search him.   Defendant Dickson asserts that the detention and search were reasonable investigative measures under *Terry v. Ohio*, 392 U.S. 1 (1968).

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated."  U.S. Const. amend. IV.  The Fourth Amendment does not prohibit all seizures--only unreasonable ones.  *Id*. at 9.  Under *Terry* the determination whether a seizure is reasonable involves a two-pronged test: (1) Was the officer's action justified at its inception?; and, (2) Was his action reasonably related in scope to the circumstances which justified the interference in the first place?  *Id*. at 19-20.  A law enforcement officer may stop an individual when the officer has "a particularized and objective basis for suspecting the particular person stopped [was involved in] criminal activity."  *United States v. Villagrana-Flores*, 467 F.3d 1269, 1273 (10th Cir. 2006). Reasonable suspicion "is based upon the totality of the circumstances, taking into account an officer's reasonable inference based on training, experience, and common sense."  *United States v. Rice*, 483 F.3d 1079, 1083 (10th Cir. 2001)(internal citations quotations omitted).

In addition, "given evidence of officer safety concerns, officers may in appropriate circumstances take steps to protect their personal safety and maintain the status quo during a *Terry* stop." *Cortez v. McCauley*, 478 F.3d 1108, 1130 (10th Cir. 2007) (citing *Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1030-31 (10th Cir.1997) and *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993)). As explained by the Tenth Circuit in *Cortez*, "[a]lthough *Terry* stops are normally nonintrusive, we have indicated that law enforcement may (1) display some force, (2) place suspects on the ground, (3) use handcuffs, or (4) detain suspects in law enforcement vehicles, even in the absence of probable cause." *Id*. at 1130 (citation omitted). When determining whether a *Terry* stop is reasonable, a court "should take care to consider whether police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second guessing." *United States v. Shareef*, 100 F.3d 1491, 1505 (10th Cir. 1996) (internal citations quotations omitted).

The record here supports the finding that Plaintiff's initial detention was justified at its inception because Officer Dickson was investigating reports of a serious, and possibly ongoing, crime in the area where Plaintiff was located. Plaintiff does not dispute that Dickson was responding to reports of a robbery involving stolen guns and shots being fired near his location. In fact, Plaintiff states that shortly before Dickson's arrival Plaintiff's friend told him "people are fighting outside and I just heard a gunshot." *See* Affidavit of Joshua Busby (Doc. no. 28). Plaintiff also does not dispute that Dickson saw Plaintiff out on the street near a car which drove away after Dickson arrived. Based on these factors Officer Dickson had ample reason to believe

that Plaintiff might be involved with the criminal activity reported in the area, making Dickson's decision to stop Plaintiff for questioning entirely reasonable.[3]

Officer Dickson's decision to search Plaintiff was also reasonable based on information gathered during questioning.  Dickson states that while talking to Plaintiff he learned that Plaintiff was recently released from prison, was staying at a nearby halfway-house, and had a conviction for robbery.  Officer Dickson also observed Plaintiff repeatedly put his hands in his pockets despite multiple instructions not to do so.  Finally, Officer Dickson was informed that Plaintiff had an outstanding arrest warrant from Idaho.  Under these circumstances Officer Dickson was justified in ensuring his safety by searching Plaintiff for weapons.  While conducting this initial search Dickson found a knife in Plaintiff's pocket, despite Plaintiff's statements that he did not have any weapons on him.  As Officer Dickson patted Plaintiff's front pocket he felt a suspicious object and asked Plaintiff what it was.  It was at this point that Plaintiff fled.  None of Officer Dickson's actions exceeded the permissible scope of a *Terry* stop. In fact, under *Cortez*, Officer Dickson could have permissibly used far more intrusive measures to ensure his safety, including placing Plaintiff on the ground and handcuffing him.

Thus, the Court finds no support for Plaintiff's claim that his initial detention and search were unreasonable under the Fourth Amendment.

---

[3]  Plaintiff's affidavit states that he was babysitting nearby and was merely seeing a friend off when Dickson stopped him.  (Dickson Aff. ¶¶ 2-6.)  Even accepting this to be true, however, these facts do not undermine Officer Dickson's determination that Plaintiff might have knowledge of the reported criminal activity nearby.

**B.  Excessive Force**

Plaintiff alleges that Officer Call used excessive force to effectuate Plaintiff's arrest by hitting Plaintiff with a flashlight.  Plaintiff states that during his apprehension he sustained shattered and chipped teeth and a one-inch laceration on his head.  Officer Call denies intentionally hitting Plaintiff with a flashlight and asserts that Plaintiff's injuries were accidental and resulted from Plaintiff's attempts to flee and Defendants' reasonable efforts to apprehend him.

The Supreme Court has explained that the touchstone of the Fourth Amendment reasonableness inquiry is whether the officers' actions are "objectively reasonable."  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  The reasonableness of a seizure depends not just on why or when it is made, but also on how it is accomplished.  *Id*.  Thus, the inquiry focuses not on the officers' particular motivations, nor on the arrestee's subjective perception of the intrusion, but on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them."  *Id*. at 397.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id*. at 396.   Moreover, the Fourth Amendment "does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (citation omitted).

While the Fourth Amendment reasonableness inquiry cannot be reduced to a simple formula or bright line test, the Supreme Court has delineated three, non-exclusive factors relevant to analyzing the reasonableness of force used during arrest, these include: "[1] the

severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

The record here does not support Plaintiff's claim that Defendants used excessive force during his arrest. Although Defendants admit that Plaintiff sustained injuries to his face and head, they assert that these injuries were accidental and occurred during Plaintiff's attempts to flee and during the scuffle that ensued while they were trying to subdue him. Analysis of the *Graham* factors supports Defendants' contention that the force used was reasonable. First, the crimes being investigated at the time of the incident were extremely serious. Officers Dickson and Call were responding in the early morning hours to reports of stolen weapons and shots fired. Second, Defendants had ample reason to believe that Plaintiff posed a grave threat to them and others. Not only were the officers aware that Plaintiff was a convicted felon who was recently released from prison, they also had ample reason to believe Plaintiff was armed based on his false statements about having a knife and the concealment of something in his front pocket. Finally, Plaintiff does not deny that he fled from the officers and resisted arrest. In fact, Plaintiff pled guilty to such charges. These facts are sufficient to satisfy Defendants' initial burden of showing that their use of force was reasonable, thereby shifting the burden of proof to Plaintiff.

Plaintiff has not met his burden of presenting evidence showing a genuine issue of fact regarding the reasonableness of the force used by Defendants. In his sworn Complaint Plaintiff alleges: "I ran into my backyard I hit a fence in my backyard and was on my hands and knees when Officer Lucas Call of the Ogden Police Dept. came up and hit me in the mouth with his

maglight . . . ."  (Compl. at 4.)  Plaintiff's only evidence to support this allegation, however, is

his unsworn affidavit describing his injuries and stating that they were caused by being hit with a

flashlight.  (Doc. no. 25.)  Attached as an exhibit to that document is a copy of Officer Call's

supplemental incident report on which Plaintiff has circled the following paragraph:

> While Officer Dickson was speaking with Josh, Josh said that I had
> hit him with a flash light.  Josh explained that he had tried to duck
> under my arms to get away from me.  That must have been when Josh
> was hit in the face with the flash light.  During the incident I did not
> punch or swing at Josh.  Medical and Sgt. Weloth was [sic] requested
> to the scene.  CSI responded for photos.  I accompanied Josh to the
> hospital where he was seen by medical staff.  Josh was treated for a
> laceration on the head, cut lip, and loose teeth.  He was later
> transported to Weber County Jail.

(Doc. no 25, Ex. B at 2.)  Elsewhere in his supplemental report Officer Call states that when he

exited his vehicle to chase Plaintiff he grabbed his flashlight, that he used the flashlight for

illumination throughout the chase, and that he was still holding the flashlight when he put his

arms out to tackle Plaintiff.  (Doc. no. 25, Ex. B at 2.)  Plaintiff has not refuted any of these

statements, which support Officer Call's assertion that Plaintiff may have been accidentally hit in

the face with the flashlight when he attempted to duck under Calls arms to avoid being tackled.

Under the circumstances presented here, such an unintentional use of force cannot be considered

unreasonable under the Fourth Amendment.  As the Tenth Circuit has noted, when evaluating a

situation where police are acting in a swiftly developing situation, such as the one presented here,

courts should not indulge in "unrealistic second guessing."  *United States v. Shareef*, 100 F.3d

1491, 1505 (10th Cir. 1996).  Any suggestion that Officer Call should have dropped his flashlight

or taken other precautionary measures before trying to tackle Plaintiff is based entirely on the 20/20 vision of hindsight.

Although Plaintiff has filed a motion for discovery seeking production of pictures of his injuries, there is no reason to believe that the pictures would substantially bolster his claim of being beaten with a flashlight.  Defendants have not disputed Plaintiff's characterization of his injuries and the Court accepts Plaintiff's characterization for purposes of this motion.  However, Plaintiff's alleged injuries–missing and broken teeth and a cut head–are entirely consistent with the undisputed facts presented by Defendants, which show that Plaintiff ran headlong into a fence, was tackled to the ground by two officers (at least one of whom was holding a flashlight) and then scuffled with officers for fifteen to twenty seconds while resisting being handcuffed.  Plaintiff's affidavit states that he does not dispute Defendants' account of these events.  (Doc. no. 28 ¶ 10.)

Thus, given the scant evidence supporting Plaintiff's allegation that he was intentionally struck with a flashlight, the Court concludes that Plaintiff has not met his burden of showing a genuine issue of material fact regarding whether Defendants used excessive force during Plaintiff's arrest.

### C.  Qualified Immunity

Defendants assert that even if their actions were found to be unreasonable under the Fourth Amendment, they are entitled to qualified immunity because the specific contours of the rights at issue were not clearly established at the time of this incident.  Plaintiff has not directly responded to Defendants' assertion of qualified immunity.

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, immunity questions should be addressed at the earliest possible stage in litigation. *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

Given the underlying purposes of qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). By asserting qualified immunity a defendant places a "heavy two-part burden" upon the plaintiff. *Id.* The plaintiff must establish that the facts, taken in the light most favorable to him, show that the officer's conduct violated a constitutional or statutory right, and, that the right in question was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. The determination whether a right is clearly established must be made "in the light of the specific context of the case, not as a broad general proposition." *Id.* And, "the relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. If the plaintiff cannot satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

13

The Supreme Court has held that in Fourth Amendment search and seizure cases qualified immunity provides officers an extra level of protection–"in addition to the deference officers receive on the underlying constitutional claim"–by allowing immunity from suit if the relevant legal boundaries were not clearly established at the time of the alleged violation. *Saucier*, 533 U.S. 206. In such cases, to overcome qualified immunity a plaintiff must not only show that the officer's actions were "objectively unreasonable," but also that the officer's mistaken belief as to the legality of his actions was itself unreasonable. *Id*. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202. Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Court finds that the only area where Plaintiff could conceivably show any unreasonable act by Defendants is in regard to Officer Call's unintentionally striking Plaintiff in the face with his flashlight. However, even assuming that Officer Call's attempt to tackle Plaintiff while holding his flashlight could be considered unreasonable under the Fourth Amendment, Plaintiff has not offered any caselaw showing that the unreasonableness of this action was clearly established at the time of the incident. The Court is also unaware of any such legal precedent. Instead, it has long been established that the right of law enforcement officers to make an arrest necessarily carries with it the right to use physical force and that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the

14

Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotes omitted).

Thus, Defendant Call is entitled to qualified immunity with regard to this claim.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's Motion for Discovery (Doc. no. 23) is **DENIED**;

(2) Defendants' Motion for Summary Judgment (Dkt. no. 20) is **GRANTED**; and,

(3) this case is **CLOSED**.

DATED this 16th day of March, 2012.

BY THE COURT:

_____

TED STEWART, Chief Judge
United States District Court